## ATLANTIC REFINING CO. v. JAMES B. BERRY SONS' CO., Inc.

### No. 2863.

District Court, W. D. Pennsylvania.

April 27, 1936.

Kenyon & Kenyon, Theodore S. Kenyon, Edgar F. Baumgartner, and Joseph V. Meigs, all of New York City, Brown, Critchlow & Flick and Jo. Baily Brown, all of Pittsburgh, Pa., for plaintiff.

Thos. G. Haight, of Jersey City, N. J., William F. Hall, of Washington, D. C., L. Clyde Strickland, of Pittsburgh, Pa., E. J. Jones, of Bradford, Pa., and Byrnes, Stebbins & Blenko, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

The court makes the following findings of fact:

1. This is a suit in equity wherein the defendant is charged to infringe United States patent No. 1,680,421 entitled "Fractional Distillation" filed March 25, 1926, by Joseph W. Lewis, Jr., and granted August 14, 1928, to the plaintiff, the Atlantic Refining Company, a corporation of Pennsylvania, as assignee.

2. The defendant is a Pennsylvania corporation and a subsidiary of Quaker State Oil Refining Corporation. It conducts the process complained of in apparatus installed and operating at its plant at Oil City, Pa.

3. Suit was brought in November, 1933, answer filed in February, 1934, depositions were taken on behalf of defendant in January, February, and March, 1935, the case

was tried in open court in April, 1935, and argued in October, 1935, briefs having been filed by both sides during the period between April and October.

4. Plaintiff's title to the patent in suit and the giving of notice of infringement are admitted.

5. Claims 1 and 2 of the Lewis patent in suit are relied upon by plaintiff. Said claims are as follows:

"1. In the art of fractionally distilling hydrocarbon oils, the method which comprises passing vapors of the oil counter current to and in contact with reflux oil, withdrawing a portion of the reflux oil intermediate the lightest and heaviest fractions, passing the reflux oil so withdrawn counter current to steam in contact therewith to remove low boiling components, thereby yielding an intermediate fraction of higher flash point, and continuing the other portion of the reflux oil counter current to the vapors in an earlier stage of the fractionating system."

"2. In the art of fractionally distilling hydrocarbon oils, the method which comprises passing vapors of the oil counter current to and in contact with reflux oil, withdrawing a portion of the reflux oil intermediate the lightest and heaviest fractions, subjecting the reflux oil so withdrawn to direct contact with steam to separate low boiling point components, returning the vapors of the separated low boiling components into the fractionating system, and continuing the other portion of the reflux oil counter current to the vapor in an earlier stage of the fractionating system."

6. Defendant's Foster Wheeler, modern, single flash, plurality of side streams, distillation unit, which is charged to infringe the patent in suit, is illustrated and described in a stipulation, entered into between the parties, in evidence as Plaintiff's Exhibit 6, and the unit includes, generally, parts as follows:

(a) A supply tank from which crude oil is pumped.

(b) A pipe heater, or pipe still.

(c) A fractionating column having a plurality of both rectifying and exhausting sections built therein, or composing the same.

(d) An overhead draw-off line, for vapors, leading to a partial condenser, then to a final condenser, and then to storage.

(e) A bottom draw-off line from the fractionating column leading to a cooler and then to storage.

(f) A reflux line for returning the condensate formed in the partial condenser to the top of the fractionating column.

(g) Three side stream draw-off lines which lead to suitable coolers and then to storage; and

(h) Steam lines for discharging open steam into each of the exhausting sections incorporated in the fractionating column.

The fractionating column consists of a cylindrical tower about 100 feet high having an internal diameter of approximately 5 feet, 9 inches. Located at separated points in this tower are four rectifying sections, with an overflow discharge from the bottom plate of each. A weir mechanism is associated with the discharge from the bottom plate of each of the three uppermost rectifying sections for controlling the liquid discharged from such plate, so as to direct a part of it into the subadjacent exhausting section, and the balance into the top of the subadjacent rectifying section. A large separating chamber is located between the bottom plate of the lowermost rectifying section and the top plate of a series of plates, or trays, located in the lower most exhausting section, into which chamber discharges the transfer line leading from the outlet of the heating coils of the pipe still. The liquid oil from this chamber overflows into the subadjacent exhausting section.

From a suitable supply, steam is fed through a superheating coil in the furnace, and then through a main pipe with branches discharging into each of the exhausting sections. The steam is brought into direct contact with the liquid, which passes downwardly through each exhausting section.

In the described unit, the side streams from the fractionating column (each being a distillate stream), as well as the bottom stream from the fractionating column, are stripped in the exhausting columns aforesaid by open steam, before said streams leave the fractionating column. This unit operates under atmospheric pressure.

The exhausting sections for stripping the side stream material are, in function and purpose, nothing more than duplicates of the bottom stream stripper.

The pipe heater, or pipe still, of this apparatus is of the countercurrent flow

type (the oil flows in a direction counter to the flow of the flue gases), and consists of 4-inch tubing forming coils approximately 1,600 feet in length. The coils are located in a furnace having a convection heat section and a radiant heat section.

7. As originally filed in the Patent Office, the application contained twelve apparatus claims, and later three others were added. All of these apparatus claims were rejected upon the prior art.

The claims in suit are method claims. They disclose a method of distilling hydrocarbon oils which differs from that set forth in the prior Peterkin patent No. 1,-709,874, application June 4, 1925, only by the substitution of steaming columns for the condensers shown by Peterkin for the purpose of raising the flash point of each side stream distillate. The method and extent of the heating of the oil, its discharge into a fractionating and stripping column, the operation of the column, the withdrawal in side streams of a portion of the reflux in the column from intermediate plates, were all exactly as shown by Peterkin.

8. In November, 1924, plaintiff built and successfully operated a unit which was substantially as shown by the drawings and specifications of the Peterkin patent.

9. An exhausting section, or steaming column, had been long known in, and was a common tool of, the art of distilling hydrocarbon oils, at the time the application in suit was filed. Its employment was the use of an old device for accomplishing its well-known effect, and its attachment to an intermediate side stream of the Peterkin patent did not constitute invention.

10. Prior to the grant of the patent in suit, manufacturers of equipment for the distillation of petroleum, other than plaintiff, had built fractionating and stripping towers, similar to that of defendant, which provided means for stripping intermediate side streams.

11. The feature of taking off a side stream from a rectifying column, the amount of which being less than the whole of the condensate at the point of withdrawal, and the balance of the condensate going down the column countercurrent to rising vapors, is disclosed in Weisberg patent No. 1,676,232, issued July 3, 1928, pursuant to application filed November 29, 1921.

12. The Vacuum Oil Company, from 1918 to 1928, at its Olean, N. Y., refinery, operated a fractionating unit which was made up of a shell heater, a tower into the bottom of which oil vapors from the heater were discharged, and means for condensing the vapors as they passed upwardly, creating a plurality of fractions which differed in their boiling points. These fractions were drawn off as side streams, each fraction being stripped by open steam before withdrawal. This unit, as originally constructed, was based upon the teaching of Wright & Atwood patent No. 1,278,280, issued September 10, 1918, which discloses a method of bringing side streams of petroleum to specifications by stripping them by means of open steam prior to their withdrawal from the fractionating tower, i. e., interior stripping, as in Fig. No. 2 of the patent in suit.

13. Fig. No. 2 of the drawing attached to the patent in suit, as illustrating a form of apparatus for the operation of the process of the patent, disclosed a fractionating and rectifying tower wherein side streams were stripped by means of open steam prior to their withdrawal from the tower. This form, which is similar to defendant's tower in operation, was not the suggestion of the patentee herein, Joseph W. Lewis, Jr. Lewis' suggested form was as in Fig. 1 of the drawings, which shows short steaming columns outside of the tower. Fig. No. 2 was inserted in the instant patent after an interference had been declared with Primrose patent No. 1,893,-906.

14. The Shell Company, in its operation at Martinez, Cal., as early as 1916, conducted a petroleum distillation operation wherein the oil was heated in a coil pipe, discharged into a separating chamber, with condenser attached, and steam stripped, the vapors being forwarded to eight dephlegmators, each consisting of a rectifying section, a partial condenser, thereby furnishing reflux, and a stripping section. Open steam was used in each dephlegmator to strip the particular part of the side stream within it. This unit was described in a book written by Dr. E. H. Leslie in 1923, entitled "Motor Fuels." In it he suggested a substitution of a steaming column for the separators shown by the patent.

The Shell Company also operated a petroleum distillery at Wood River, Ill., in April, 1925, where a slight difference in

894

the procedure existed. The residue from the evaporator was sent through a series of steaming columns for stripping.

15. The date of discovery of the patent in suit is anticipated by Leslie and Baker patent No. 1,868,466, filed June 29, 1925, and issued July 19, 1932.

16. The use of open steam for effecting vaporization, and particularly for stripping either residual oil or a distillate, is one of the most common and frequently used expedients in distillation for the purpose of obtaining a specification product, a d was known in the petroleum art long before Lewis' application for the patent in suit.

17. The charge that plaintiff has suppressed evidence has not been established by the proof.

Conclusions of Law.

I. Defendant infringes the patent in suit if the patent is valid.

II. Claims 1 and 2 of Lewis patent No. 1,680,421 are invalid, because they present nothing but an aggregation of elements, each of which was old in the distillation art and performed its regular and well-known function.

III. Said claims in suit are invalid, because they disclose merely the use of a steaming column to strip a distillate side stream which has been produced from a fractionating and rectifying tower, old in the art, the steaming column being a device long used in the distillation of petroleum and operating under the claims to function as it always had functioned in accordance with the laws of its being.

IV. A steaming column and its function being so long and well known in the distillation art as to be a "tool" of the art, no one may appropriate its use to himself and exclude others from using it in any usual way for any purpose to which it might be applied.

V. That a number of equipment manufacturers, prior to the issuance of the patent in suit, independently of the patentee or his assignee, installed apparatus similar to the alleged infringing device, tends to show that the alleged invention was a product of mechanical skill, and not invention.

VI. The plaintiff's bill of complaint should be dismissed.